ROBERT M. YASPAN, SBN 051867
JOSEPH G. McCARTY, SBN 151020
DEBRA R. BRAND, SBN 162285
LAW OFFICES OF ROBERT M. YASPAN
21700 Oxnard Street, Suite 1750
Woodland Hills, CA  91367
Telephone:  (818) 774-9929
Facsimile: (818) 774-9989

General Counsel for Debtor

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | ) Chapter  No.:   11 |
| | ) |
| PACIFIC CENTREX SERVICES, INC., | ) Bk. Case No.: 1:09-bk-17942 |
| a California Corporation, dba PSC1, | ) |
| | ) **REDLINE VERSIONS OF FIRST** |
| Debtor. | ) **AMENDED PLAN OF REORGANIZATION AND** |
| | ) **DISCLOSURE STATEMENT SUBMITTED BY** |
| | ) **DEBTOR** |

**[DISCLOSURE STATEMENT HEARING]**

Date:  August 25, 2011
Time:  11:00 a.m.
Place:  Courtroom 302

**[PLAN CONFIRMATION HEARING]**

Date:  _____, 2010 [to be set]
Time:  _____ p.m.
Place:

1

1    TO: THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY

2    JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE CREDITORS

3    AND OTHER INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

4         Pacific Centrex Services, Inc., a California Corporation, Debtor and Debtor-in-

5    Possession ("Palm Springs" or "Debtor"), which has filed its First Amended Plan of

6    Reorganization (the "Plan")  and Disclosure Statement ("Disclosure Statement") , hereby

7

8    submits the redline of the changed sections in the amended documents as follows:

9         1.    The redline version of the of Debtor's First Amended Plan are attached hereto

10   collectively as Exhibit A. **Inserted language is in bold and is enclosed by brackets [ ]** .  Deleted

11   language is indicated by the word **delete** – and is enclosed in brackets **[ ].**  The final version of the

12   First Amended Plan is filed separately.

13

14        2.    The redline version of Debtor's Disclosure Statement for the First Amended Plan are

15   attached hereto collectively as Exhibit B. **Inserted language is in bold and is enclosed by brackets [**

16   **]** .  Deleted language is indicated by the word **delete** – and is enclosed in brackets **[ ].**  The final

17   version of the Disclosure Statement for the First Amended Plan is filed separately.

18

19   Dated: August 1, 2011              LAW OFFICES OF ROBERT M. YASPAN

20

21

22                                     Robert M. Yaspan
                                       Joseph G. McCarty
23                                     21700 Oxnard Street, Suite 1750
                                       Woodland Hills, California 91367
24                                     Telephone:  (818) 774-9929
                                       Facsimile: (818) 774-9989
25                                     General Counsel for Debtor

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1  ROBERT M. YASPAN, SBN 051867
   JOSEPH G. McCARTY, SBN 151020
2  DEBRA R. BRAND, SBN 162285
3  LAW OFFICES OF ROBERT M. YASPAN
   21700 Oxnard Street, Suite 1750
4  Woodland Hills, CA 91367
   Telephone: (818) 774-9929
5  Facsimile: (818) 774-9989

6
   General Counsel for Debtor
7

8

9              UNITED STATES BANKRUPTCY COURT
              CENTRAL DISTRICT OF CALIFORNIA
10             SAN FERNANDO VALLEY DIVISION

11 In re                          )  Chapter No.:  11
                                  )
12                                )
   PACIFIC CENTREX SERVICES, INC.,)  Bk. Case No.: 1:09-bk-17942
13 a California Corporation, dba PSC1, )
                                  )
14             Debtor.            )  **FIRST AMENDED PLAN OF**
                                  )  **REORGANIZATION SUBMITTED BY DEBTOR**
15 _____)

16

17                               **[DISCLOSURE STATEMENT HEARING]**

18                               Date:   August 25, 2011
                                 Time:   11:00 a.m.
19                               Place:  Courtroom 302

20

21                               **[PLAN CONFIRMATION HEARING]**

22                               Date:   _____, 2010 [to be set]
23                               Time:   _____ p.m.
                                 Place:
24

25

26

27

28

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| II. | **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** . . | 3 |
| | A.    General Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| | B.    Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| |        1.     Administrative Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| | C.    Classified Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| |        1.     Classes of Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| |        2.     Classes of Priority Unsecured Claims . . . . . . . . . . . . . . . . . . | 7 |
| |        3.     Classes of General Unsecured Claims . . . . . . . . . . . . . . . . . . | 8 |
| |        4.     Class(es) of Interest Holders . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| | D.    Means of Performing the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| |        1.     Funding for the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| |        2.     Post-Confirmation Management . . . . . . . . . . . . . . . . . . . . . . | 10 |
| |        3.     Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| |        4.     Mechanics Liens, etc. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| III. | **TREATMENT OF MISCELLANEOUS ITEMS** . . . . . . . . . . . . . . . . . . . | 10 |
| | A.    Executory Contracts and Unexpired Leases . . . . . . . . . . . . . . . . | 10 |
| |        1.     Assumptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 10 |
| |        2.     Rejections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| | B.    Changes in Rates Subject to Regulatory Commission | |
| |        Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| | C.    Retention of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 11 |
| | D.    Cure Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| IV. | **EFFECT OF CONFIRMATION OF PLAN** . . . . . . . . . . . . . . . . . . . . . . | 12 |
| | A.    Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 12 |
| | B.    Revesting of Property in the Debtor . . . . . . . . . . . . . . . . . . . . . | 12 |
| | C.    Modification of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| | D.    Post-Confirmation Status Report . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| | E.    Quarterly Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 13 |
| | F.    Post-Confirmation Conversion/Dismissal . . . . . . . . . . . . . . . . . | 13 |
| | G.    Final Decree . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |

# I
## INTRODUCTION

<u>Pacific Centrex Services, Inc., a California corporation,</u> is the Debtor in a Chapter 11 bankruptcy Case.  It will be referred to as the "Debtor", the "Proponent", or the "Plan Proponent".  On or about June 26, 2009 **[("Commencement Date")]** the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq. This document is the Chapter 11 Plan of Reorganization ("Plan") proposed by the Debtor.  Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the Court, and which is provided to help you understand the Plan.

This is a reorganizing plan that contemplates the continuance of the business operations of the Debtor.  In other words, the Proponent seeks to accomplish payments under the Plan by operating its business subsequent to the confirmation of the Plan, as described more completely in the Disclosure Statement to the Plan of Reorganization, (the "Disclosure Statement").

The Effective Date of the proposed Plan is the 1ST day of the first month after which the order confirming the Plan has become final.

# II.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

**A.    General Overview**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive under the Plan.

**B.    Unclassified Claims**

Certain types of claims are not placed into voting classes.  Instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically

entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class. The treatment of these claims is provided below.

### 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 507(a)(1). The Code requires that all administrative claims be paid on the Effective Date of the Plan unless a particular claimant agrees to a different treatment. The following chart lists all of the Debtor's § 507(a)(1) administrative claims and their treatment under this Plan.

1.        Law Offices of Robert M. Yaspan – Approximately $ **[210,000] [delete -80,000]**; paid in full on the Effective Date.

2.        Court fees – estimated at $500; paid in full on the Effective Date.

3.        Office of US Trustee Fees - $4,850; paid in full on the Effective Date.

4.        **[Universal Service Administrative Co. ("USAC") - Universal Service Fund ("USF") obligations – currently $3,811. 21 (as of July 27, 2011) which will be paid when due in the regular course of business (payment of $1,954.23 for July, 2011 is in transit – the remainder -$1,856.98 will be paid in August, 2011 when due). Debtor will continue to pay any amounts when due in the regular course of business. In 2012 (for 2011 revenue) and annually thereafter, Debtor will submit Annual Revenue Reports to USAC when due to determine any Annual True-Up payments that may be due. Any such Annual True-Up payments will be paid when due in the regular course of business. Debtor shall be fully responsible for any and all post-confirmation adjustments to its USF obligations. Debtor shall be entitled to any post-confirmation credits, net of any unpaid USF obligations, if any. Debtor will file and/or update post-confirmation revenue reports, including reports that relate to pre-confirmation periods, if**

4

**any. ]**

5.      Claims incurred in the regular course of business will be paid in the regular course of business, and not necessarily from the account of the Disbursing Agent appointed under this Plan.

Court Approval of Fees Required:

The Court must approve all legal and professional fees listed . For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be required to be paid under this Plan.

**2.      Priority Tax Claims**

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the date of the filing of this Chapter 11 petition.

The following chart lists <u>all</u> of the Debtor's Section 507(a)(8) priority unsecured tax claims and their treatment under this Plan.

Los Angeles County Tax Collector - $765,865.79

Treatment: The allowed amount of this claim will be paid over a period of time, in equal monthly installments, not exceeding the maximum repayment period provided for in Section 1129 of the Bankruptcy Code for unsecured prefiling tax claims. Interest shall accrue on these claims at 4% interest per annum.

Note: The Debtor disputes the amount of this claim.  Thus, the allowed amount may be different than the claimed amount:

California State Board of Equalization - $112,278.39

Treatment: The allowed amount of this claim will be paid over a period of time, in equal monthly installments, not exceeding the maximum repayment period provided for in Section 1129 of the Bankruptcy Code for unsecured prefiling tax claims. Interest shall accrue on these claims at 4% interest per annum.

Note: The Debtor disputes the amount of this claim.  Thus, the allowed amount may be different than the claimed amount.

California Franchise Tax Board - $836.60.

Treatment: The allowed amount of this claim will be paid in full on the Effective Date.

Internal Revenue Service - $14,961.

Treatment: The allowed amount of this claim will be paid over a period of time, in equal monthly installments, not exceeding the maximum repayment period provided for in Section 1129 of the Bankruptcy Code for unsecured prefiling tax claims. Interest shall accrue on these claims at 4% interest per annum.

Note: The Debtor may dispute the amount of this claim.  Thus, the allowed amount may be different than the claimed amount.

**C.    Classified Claims and Interests**

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

**1.    Classes of Secured Claims**

CLASS 1.1   Ronald H. and Lisa Semler Trust: Amount of Claim: Approximately a principal balance of $2,733,000, plus applicable interest, as allowed.  The claimant has filed a Proof of Claim in the amount of $3,859,819.18, including principal, interest, fees and costs. **[delete** -The Debtor may object to the amount, but not the priority or security, of this claim.**]**

6

1      Security:      All of the personal property assets of the Debtor.

2      Treatment of Creditor: This creditor is deemed to be secured as the value of the property

3    securing the debt is greater than the Debt owing against it. Payments will be made on this secured

4

5    claim as follows: (1) $20,480 per month, principal and interest inclusive, until paid in full; (2) Interest

6    shall accrue from the Petition Date through payoff at the rate of 6% per annum.

7      The existing security documents shall be amended to conform to the PLAN forthwith after the

8    Effective Date.  Except as modified herein the existing note and security documents shall control.

9

10      The existing security interests shall be deemed to be valid and existing claims against the

11    property of the Debtor as provided in the security documents.

12    Impairment: This Creditor is impaired.

13    CLASS 1.2    TOYOTA MOTOR CREDIT CORPORATION[("Toyota")]:  This creditor

14    shall be treated as provided in that certain Stipulation approved by the Court as an "Agreed Order" on

15    February 10, 2010, a copy of which is attached as Exhibit 5A hereto. **[Pursuant to the resolution of**

16

17    **its claim, Toyota will vote to confirm Debtor's First Amended Plan.]**

18    Impairment: This Creditor is impaired **[delete - **, but is deemed to have voted for the Plan].

19    **2.      Classes of Priority Unsecured Claims**

20    Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are

21    required to be placed in classes. These types of claims are entitled to priority treatment as follows: the

22

23    Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed

24    amount of such claim.  However, a class of unsecured priority claim holders may vote to accept

25    deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such

26

27    claim. The following chart lists all classes containing Debtor's 507(a)(3), (4), (5), (6), and (7) priority

28    unsecured claims and their treatment under this Plan:

1 THERE ARE NO SUCH PRIORITY UNSECURED CLAIMS

2 **3. Classes of General Unsecured Claims**

3 **CLASS 2:  General Unsecured Claims (other than the claims of Pacific Bell, AT&T, and**

4

5 **their affiliates)**

6 Amount of Claims: Approximately $4,472,000 (approximately 115 claimants)

7 Description:  This Class two contains the claims of those creditors (other than Pacific Bell,

8 AT&T, and their affiliates) who do not have any priority under the Bankruptcy Code, or any security

9

10 for their claims.

11 Treatment: The Debtor proposes to treat these claims as follows:  The Debtor will deposit the

12 sum of $244,800 into a "pot" at the rate of $6,800 per month starting on **[the sixth month after]** the

13 Effective Date (the "Pot").  This will take 36 months.   Allowed Class 2 Claims against the Pot shall

14 be paid quarterly starting 75 days after the Effective Date, and continuing every 90 days thereafter

15

16 (the "Pot Payment").  A claim that is partially or wholly disallowed shall only be paid based on the

17 allowed amount of the claim.  Should a claim be under dispute at a time that a Pot Payment, the

18 amount of the claim shall be estimated, and reserved against, pending the further order of the Court as

19 to the amount of the allowable claim.

20 **CLASS 3  General Unsecured Claims due to Pacific Bell Telephone Company dba AT&T**

21

22 **California, and their affiliates ("AT&T")**

23 Amount of Claim: $3,118,933.

24 Description: Prefiling fees allegedly due to the wholesaler of communications services to the

25 Debtor.  The claim consists of two parts: (1) the sum of approximately $**[1.1][delete-**1**]** million

26 relating to services rendered by the claimant immediately prior to the filing of the Chapter 11 petition,

27 and (2) the sum of approximately $**[2.0][delete-**1.9**]** million relating to the retroactive billing of

28

1  previously charged fees.  The Debtor disputes the claim.  As a part of the assumption of the alleged

2  executory contract between the Debtor and **[AT&T][delete** - the Creditor], the Debtor is required to

3  cure any defaults on the executory contract, including those normally considered as general unsecured

4  claims.

5       TREATMENT:  **[Prior to the date of hearing on the Debtor's Disclosure Statement,**

6  **Debtor will be filing a motion ("Assumption Motion") seeking entry of an order on or before**

7  **September 15, 2011 ("Assumption Order"), that provides for the assumption of contracts with**

8  **AT&T, including (1) that certain Commercial Agreement (Transit Agreement) and (2) that**

9  **certain Interconnection and/or Resale Agreement (collectively, the "Agreements").**

10      **The Assumption Order shall include the following terms, which are hereby incorporated**

11  **into this Plan:**

12      **(a)     The cure payment owing to AT&T under Section 365 on account of AT&T's pre-**

13  **petition Claim in connection with assumption of the Agreements ("Cure Amount") shall**

14  **be comprised of (i) a $300,000 initial payment ("Initial Cure Payment"); and (ii) equal**

15  **installments of $12,500 paid on the first business day of each month for 70 consecutive**

16  **months, commencing on the first business day of the first month after the month in**

17  **which the Initial Cure Payment occurs ("Installment Payments" and, collectively with**

18  **the Initial Cure Payment, the "Cure Payments").  The Initial Cure Payment is to be paid**

19  **within the earlier of (i) one business days after the Assumption Order becomes final**

20  **or (ii) the Effective Date of the Plan.  If made on the Effective Date of the Plan, the**

21  **payment of the Initial Cure Payment will be deemed to be a requirement to**

22  **the occurrence of the Effective Date.**

(b)    The Installment Payments are due on the first business day of each month. If an Installment Payment is not paid by the 10th calendar day of each month, a $2,500 penalty will be added to the overall amount owed for each late payment.

(c)    If the Initial Cure Payment or any Cure Payment payment is not made by the 15th calendar day after when first due, AT&T is allowed to suspend order processing immediately without further notice to PCS and notwithstanding any restriction, notice requirement or condition imposed by the Agreements on AT&T's ability to suspend or terminate services to Debtor, and any automatic stay in effect shall be deemed lifted automatically and without need for petition to the Court or further notice.

(d)    If the Initial Cure Payment or any Cure Payment payment is not made by the 25th calendar day after when first due, AT&T is allowed to terminate services immediately without further notice to Debtor and notwithstanding any restriction, notice requirement or condition imposed by the Agreements on AT&T's ability to suspend or terminate services to Debtor, and any automatic stay in effect shall be deemed lifted automatically and without need for petition to the Court or further notice.

(e)    This treatment of AT&T is binding as to PCS's successors and assigns, and binding in any subsequent bankruptcy filing, including without limitation AT&T's conditional ability to terminate the Agreements and prospective relief from the automatic stay. If PCS files a subsequent bankruptcy before the Cure Amount is paid in full, or if this case converted to a Chapter 7, AT&T shall be entitled to an administrative claim for the remainder of the unpaid Cure Amount.

(f)    Any post-petition amounts owing to AT&T by Debtor under the Agreements shall be deemed administrative priority status and shall be paid on the Effective Date, or, if such claims are subject to dispute, on the date of resolution of such dispute in accordance with the underlying terms of the Agreements.

(g)    Debtor agrees to executed any and all documentation necessary to effectuate the terms hereof, including amendments to the Agreements, in form and substance acceptable to AT&T in its sole and absolute discretion.

The payments set forth herein will resolve AT&T's allowed claim.  No interest will accrue on AT&T's claim.  The terms of the Plan, and the disclosures in the Disclosure Statement, provide adequate assurance of future performance, as the term is defined in the Code.  Debtor and AT&T have agreed to enter a stipulation ("Stipulation") on the terms set forth herein that will include a mutual release of claims when the first of the Assumption Order or Confirmation Order becomes final.  The Adversary shall be dismissed with prejudice within 30 days thereafter.] [delete- In return for the assumption of the executory contract, and at the time of the Order assuming the executory contract, the Debtor will on the Effective Date: (1) pay all sums, if any, due for administrative services to the Debtor; and (2) commence the paying of $12,500 in 36 equal monthly payments to the claimant on account of all prefiling amounts due.] Such sum will be deemed to be the "cure", as well, of any and all of the Debtor's obligations under Section 365 of the Bankruptcy Code.

Other than as set forth herein the **[Agreements] [delete-** executory contract] between the Debtor and the claimants in this class shall remain in full force and effect.

These creditors are impaired.

4.    Class(es) of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. **[delete - If the]** Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. **[delete -If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an "LLC", then the members are the interest holders.**

If the Debtor is an individual, the Debtor is the interest holder.]

Class 5 (Interest Holders): The current interest holders are: (a) Devin Semler (90%); and (b) **[the Estate of]** Subash Khurana (10%). At the time of the confirmation of the Plan of Reorganization, this interest will be cancelled and said interest holders will no longer be members of the LLC. In return for a total new capital infusion of $**[400,000][delete**-100,000], from **[delete – the]** existing shareholder **[, Devin Semler,]** (the "NEW VALUE HOLDER"), such NEW VALUE HOLDER will receive newly-issued stock in the Debtor totaling 100% of the ownership in the Debtor.

**[Debtor contends that the $400,000 contribution is substantial, necessary, and in an amount that is reasonably equivalent to the value of the equity interest. As such, Debtor's Plan meets the requirements of the new value exception to the absolute priority rule under the Bankruptcy Code. Debtor's exclusivity period has long expired in this case. At this time, any interested party could propose an alternative plan that provides for whatever new value contribution said party deems appropriate. Therefore, as set forth in the case, <u>In re Red Mountain Machinery Company</u>, -- B.R. --, 2011 WL 1428266 (Bkr.Ct. D. Ariz. 2011), the court ruled that a substantial contribution of new value can be deemed to be reasonably equivalent to the value of the equity after a debtor's exclusivity period has expired. The <u>Red Mountain</u> case, set forth a well reasoned and thorough review of the relevant case-law. The court noted that the case, <u>Bank of America Nat'l Trust and Sav. Assn. v. 203 North LaSalle Street Partnership</u>, 526 U.S. 434 (1999) should not apply once the exclusivity period has expired since the other**

1  interested parties can then propose alternative plans.  As such, there is no further need to test

2  the market.]

3          The interest holder is <u>impaired</u>

4  **D.      Means of Performing the Plan**

5          **1.      Funding for the Plan**

6          The Plan will be funded by the following: (a) Funds in the debtor-in-possession accounts as of

7  the Effective Date, (b) the future profitable business operations of the Debtor, and (c) the new value

8  paid by the NEW VALUE HOLDER.

9          **2.      Post-confirmation Management:** Devin Semler will serve as the Manager.

10         **3.      Disbursing Agent:** Counsel for the Debtor, Robert M. Yaspan, shall act as the

11  disbursing agent for the purpose of making all distributions on the Effective Date as provided for

12  under the Plan.  All payments subsequent to the Effective Date shall be made by Mr. Semler, who

13  shall serve then as the Disbursing Agent.  The Disbursing Agent shall serve without bond and shall

14  not receive any fee for distribution services rendered and expenses incurred pursuant to the Plan

15  (although costs will be paid as incurred).

                              **III.**

                **TREATMENT OF MISCELLANEOUS ITEMS**

   **A.  Executory Contracts and Unexpired Leases**

   **1.      Assumptions**

   **[The following executory contracts shall be assumed: (1) the Agreements between the**

   **Debtor, and Pacific Bell, AT&T, and its affiliates; and (2) any and all real estate leases;    (3)**

   **That certain Equipment Lease Agreement with Tamco Capital Corporation, dated March 19,**

   **2008 for certain software, for 60 months, at a monthly payment of $1,858.66; (4) That certain**

   **Installment Payment Agreement for financing of a software license, dated October 19, 2007, for**

36 months, at a monthly payment of approximately $150; (5) That certain Hasler Financial

Services, LLC Lease Agreement, dated January 28, 2009, for 60 months at a payment of $293

per month relating to certain Hasler Equipment; and (6) That certain Master Lease

Agreement Number 456857 for an ADT/Camera System, dated February 20, 2007, for 36

months, at a payment of $333.36 per month. the lease for nonresidential property between the

Debtor and Intercontinental Hotel Group, Inc., as approved by a separately filed motion;

Pacific Centrex, Inc. Defined Benefit Plan - Pension Benefit Guaranty Corporation ("PBGC")

(as described below); (8) stipulations and settlements as made, or referred to herein, and

attached as required. The Debtor reserves the right to add additional assumptions as events

merit both prior to, and after, the Confirmation of the plan. The debtor reserves jurisdiction in

the Court for the making of such motions as are appropriate to effectuate this eventuality.

Debtor sponsors the Pacific Centrex, Inc. Defined Benefit Plan (the "Pension Plan") for

the benefit of its participants. The Pension Plan is a different legal entity from the Debtor and it

is administered by an independent third party who is not a participant in the Pension Plan. As

of December 31, 2008 there were approximately 25 participants in the Pension Plan, and the

Pension Plan had liabilities of approximately $1.395 million. It is the intent of the Debtor to

continue the Pension Plan. There is no present intent to terminate the Pension Plan prior to the

Effective Date.

The Pension Plan is a tax qualified defined benefit pension plan covered by Title IV of

the Employee Retirement Security Act of 1974, *as amended* ("ERISA"), 29 U.S.C. § 1301-1461

(2006 and Supp. II 2008).

Under ERISA, Debtor and members of its controlled group are jointly and severally

liable to PBGC for unfunded benefit liabilities, as defined in ERISA §4001(a)(18), 29 U.S.C.

§1301(a)(18), if the Pension Plan terminates. *See* ERISA §4062(b); 29 U.S.C. §1362(c). In

addition, Debtor and members of its controlled group are jointly and severally liable to the

Pension Plan for the contribution of amounts necessary to satisfy ERISA's minimum funding

standards. *See* ERISA §302, 29 U.S.C. §1082; I.R.C. §412, 26 U.S.C. §412. If the Pension Plan terminates, this liability may be owed to PBGC as the trustee appointed under 29 U.S.C. §1342. *See* 29 U.S.C. §1342(d)(1)(B)(ii). Also, Debtor and members of its controlled group are jointly and severally liable for premiums, interest, and penalties imposed by ERISA for plans covered by Title IV of ERISA. ERISA §4007(a), (b) and (e), 29 U.S.C. §1307(a), (b) and (e); 29 C.F.R. §4007.12(a).

Debtor intends to continue the Pension Plan, fund the Pension Plan in accordance with the minimum funding standards under the Internal Revenue Code and ERISA, pay all required PBGC insurance premiums, and continue to administer and operate the Pension Plan in accordance with the terms of the Pension Plan and the provisions of ERISA. Debtor's reorganization proceedings, and in particular the Plan, shall not be in any way construed as discharging, releasing or relieving the Debtor, the reorganized Debtor, or any party, in any capacity, from any liability with respect to the Pension Plan under any law or regulatory provision relating to the Pension Plan. PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such liability as a result of any of the provisions of the Plan or the Plan's confirmtation.]

[delete - No executory contracts shall be assumed except for: (1) the Agreement Between the Debtor, and Pacific Bell, AT&T, and its affiliates; and (2) any and all real estate leases;    (3) That certain Equipment Lease Agreement with Tamco Capital Corporation, dated March 19, 2008 for certain software, for 60 months, at a monthly payment of $1,858.66; (4) That certain Installment Payment Agreement for financing of a software license, dated October 19, 2007, for 36 months, at a monthly payment of approximately $150; (5) That certain Hasler Financial Services, LLC Lease Agreement, dated January 28, 2009, for 60 months at a payment of $293 per month relating to certain Hasler Equipment;  and (6)    That certain Master Lease Agreement Number 456857 for an ADT/Camera System, dated February 20, 2007, for 36 months, at a payment of $333.36 per month.]

2.    Rejections

All other executory contracts shall be rejected. It is not believed that there are any.

The order confirming the Plan shall constitute an order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Disclosure Statement for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT HAS NOT YET BEEN SET . Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

**B.      Changes in Rates Subject to Regulatory Commission Approval**

This Debtor is not subject to governmental regulatory commission approval of its rates.

**C.      Retention of Jurisdiction.**

The Court will retain jurisdiction after the confirmation of this Plan of Reorganization: (a) to the extent provided by law; (b) to the extent provided for in this Plan, so long as it is not inconsistent with the law; (c) to hear, determine and decide any avoiding powers litigation filed by the Debtor prior to the entry of the order confirming this Plan; and (d) to hear, determine and decide any litigation presently pending, including all unsettled adversaries, newly filed adversaries (if any) and appeals from contested matters (if any), and (e) to interpret and enforce the terms of the Plan.

**D.      "CURE" MATTERS:  [Debtor will be filing the Assumption Motion seeking entry of an order on or before September 15, 2011, that provides for the assumption of contracts with AT&T, including (1) that certain Commercial Agreement (Transit Agreement) and (2) that certain Interconnection and/or Resale Agreement which are collectively the Agreements as defined above.  Said assumption of the Agreements will be binding upon the earlier of the date an order on the Assumption Motion ("Assumption Order") becomes final or the date an order confirming Debtor's Plan ("Confirmation Order") becomes final.]**

1  [delete - Upon the oral order of this COURT confirming the Plan]  [**When said first order becomes**

2  **final,**] (1) the executory contract with Pacific Bell, AT&T, and its affiliates shall be assumed, (2) the

3  Debtor shall be deemed to have cured any defaults with respect thereto as of the Effective Date, and

4
5  (3) the Debtor shall be deemed to have given adequate assurances of future performance.

6  [**E.      Objection Bar Date.  To the extent that the objection bar date has already passed, the**

7  **new objection bar date shall be deemed to be 30 days after the Effective Date.**

8  **F.      Exculpation and Releases.**

9
10         **To the extent permitted under Bankruptcy Code Section 1125(e), upon the occurrence of**

11  **the Effective Date, the Debtor, the Reorganized Debtor, and their agents and professionals**

12  **(including counsel to the Debtor) shall be deemed to have no liability for any act or omission in**

13  **connection with, or arising out of, the pursuit of approval of the Disclosure Statement, the**

14  **solicitation of votes for confirmation of the Plan, for violation of any applicable law, rule or**

15  **regulation governing solicitation of acceptance or rejection of the Plan or the offer, issuance,**

16  **sale, or purchase of securities offered or sold under the Plan.  Notwithstanding the foregoing,**

17  **nothing herein shall release the Reorganized Debtor from its duties and obligations under the**

18  **Plan.**

19         **Upon the occurrence of the Effective Date, AT&T, and their officers, directors,**

20  **employees, agents, attorneys, consultants, contractors and affiliates (collectively the "AT&T**

21  **Parties"), shall be deemed to have no liability for any act or omission in connection with, or**

22  **arising out of, the business relationship between AT&T and the Debtor up to the Effective Date**

23  **(other than its future obligation under the Agreements as assumed), the Debtor's bankruptcy**

24  **case, the formulation, negotiation, or implementation of the Plan, the pursuit of approval of the**

25  **Disclosure Statement, solicitation of votes for confirmation of the Plan, or for violation of any**

26  **applicable law, rule or regulation governing solicitation of acceptance or rejection of the Plan or**

27  **the offer, issuance, sale, or purchase of securities offered or sold under the Plan.  Upon the**

28  **occurrence of the Effective Date, the Debtor, the Reorganized Debtor and the Estate, shall be**

1   deemed to have fully and forever released and discharged the AT&T Parties, from any and all

2   claims, demands and causes of action of any kind or nature whatsoever, whether known or

3   unknown, suspected or unsuspected, whether concealed or hidden, which the Debtor, the

4   Reorganized Debtor or the Estate now owns or holds or may hereafter have against the AT&T

5   Parties, arising out of events or occurrences on or before the Effective Date.

6        The Debtor, the Reorganized Debtor, and the Estate waive the provisions of California

7   Civil Code § 1542, which states:

8        "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS

9        WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT

10       TO EXIST IN HIS OR HER FAVOR AT THE TIME OF

11       EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM

12       OR HER MUST HAVE MATERIALLY AFFECTED HIS OR

13       HER SETTLEMENT WITH THE DEBTOR."

14

15  ]

16                              IV.

17              EFFECT OF CONFIRMATION OF PLAN

18  A.    Debtor to Receive Discharge

19       The Debtor will receive a discharge in this case as specified in 11 U.S.C. Section 1141(d)(1).

20
    B.    Revesting of Property in the Debtor
21

22       Except as provided in Section {IV.E.}, and except as provided elsewhere in the Plan, the

23  confirmation of the Plan vests all of the property of the estate in the Debtor free and clear of the

24  claims of creditors, claimants and interest holders, subject to the terms and conditions of this Plan.

25       Subject to the terms of this Plan, the provisions of the Bankruptcy Code, and any stipulation

26
    attached as an exhibit to this Plan creditors whose claims are treated in this Plan shall be enjoined
27

28

1  upon the order of confirmation from proceeding against the re-vested debtor or the property of the re-

2  vested debtor.

3      Except as provided in the Plan, or in the order confirming the Plan, after confirmation of the

4  Plan the property dealt with by the plan is, and shall be, free and clear of all claims and interests of

5

6  creditors, equity security holders, and of general partners in the debtor.

7  **C.    Modification of Plan**

8      The Proponent of the Plan may modify the Plan at any time before confirmation.  However,

9  the Court may require a new disclosure statement and/or revoting on the Plan if proponent

10

11  modifies the plan before confirmation.

12      The Proponent of the Plan may also seek to modify the Plan at any time after confirmation so

13  long as (1) the Plan has not been substantially consummated and (2) if the Court authorizes

14  the proposed modifications after notice and a hearing.

15

16  **D.    Post-Confirmation Status Report**

17      Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a

18  status report with the Court, should it so order in the Order Confirming Plan, explaining what progress

19  has been made toward consummation of the confirmed Plan. The status report shall be served on the

20  United States Trustee, the twenty largest unsecured creditors, and those parties who have requested

21

22  special notice.  Further status reports shall be filed every 120 days and served on the same entities.

23  **E.    Quarterly Fees**

24      Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to

25  the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28

26  U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with

27

28

1    28 U.S.C. 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to

2    chapter 7.

3    **F.    Post-Confirmation Conversion/Dismissal**

4
5    A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after

6    the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders the case

7    converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the

8    Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7

9    estate, and the automatic stay will be reimposed upon the revested property only to the extent that

10   relief from stay was not previously granted by the Court during this case.

11   **G.    Final Decree**

12          Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan

13   Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a

14   motion with the Court to obtain a final decree to close the case.

15
16
17          Date: July 22, 2010                    Pacific Centrex Services, Inc.

18                                                  _____

19                                                  By: Devin Semler, Chief Executive Officer
                                                    Authorized Signator
20
21   PRESENTED BY:

22   LAW OFFICES OF ROBERT M. YASPAN
23
24   _____
     By: Robert M. Yaspan, Esq.
25        Attorneys for Debtor in Possession
26
27
28